[No. D012810. Fourth Dist., Div. One. Dec. 8, 1992.]

DANIEL S. ESBENSEN, Plaintiff and Appellant, v.
USERWARE INTERNATIONAL, INC., et al., Defendants and
Respondents.

## COUNSEL

Endeman, Lincoln, Turek & Heater and Henry E. Heater for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, David A. Niddrie and James G. Sandler for Defendants and Respondents.

## OPINION

**WIENER, Acting P. J.**—Plaintiff Daniel Esbensen sued his former employer, defendant Userware International, Inc.,[1] and several of its officers, alleging his employment as a computer programmer was wrongfully terminated without good cause. Because his written one-year employment contract did not specify a "good cause" requirement, Esbensen unsuccessfully sought to introduce evidence of oral assurances he was allegedly given by Userware management that the contract would be perpetually renewed as long as he performed his job competently.

Userware argues the written contract must be interpreted to allow for Esbensen's termination "at will" and that in any event, the contract was fully integrated precluding the admission of evidence to show an unwritten but consistent oral understanding. We reject both arguments. The more difficult question, we believe, is Userware's additional contention that the alleged oral assurances are inconsistent with the contract's one-year term. While it might be presumed that a one-year contract term, without more, means the parties have no obligations at the expiration of the one year, here Esbensen sought to overcome that presumption by introducing evidence of an express contrary oral understanding. While Esbensen may have difficulty proving such an understanding to the satisfaction of a jury, we conclude he is entitled to make the attempt. Accordingly, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Userware is a company which provides computer-related services for small businesses and individuals. In 1977 Userware hired Esbensen as a computer programmer pursuant to an oral contract between Esbensen and Richard Rhodes, an officer and one of the founders of Userware. At Esbensen's insistence, the contract was later reduced to writing and beginning in May 1979, a series of three virtually identical one-year contracts was signed. In addition to a monthly salary, Esbensen was entitled to a 10 percent "commission" on sales of software products he developed.

Several provisions of the final three-page contract executed in 1981 bear on the issues presented by this case. In the first paragraph, the contract specifies that Esbensen "will receive a regular weekly salary of $675.00 which amount will be reviewed on an annual basis." Paragraph IV is titled "Term of Agreement" and provides: "This agreement is effective June 1,

---

[1]At the time the relevant contracts were entered into, Userware was known as North County Computer Services. For sake of clarity, we refer to the corporate defendant consistently as Userware.

1981, for a period of one year; however, this agreement may be terminated earlier as hereinafter provided." Paragraph V, titled "Termination," goes on to state: "This agreement may be terminated by either party by giving two weeks written notice of termination to the other party. Upon termination for any reason, all salary shall cease on the effective date of termination. [Userware] will continue to pay commission as outlined in section II for a period of 180 days after the effective date of termination."

In January 1982, Esbensen was terminated by Userware allegedly, among other reasons, because he failed to timely report for work following a vacation. Esbensen responded by filing suit for breach of contract, asserting he had been told by Rhodes that the series of one-year contracts would be renewed perpetually as long as he was doing his job. In effect, according to Esbensen, his contract included an implied term that he could not be terminated except for good cause.

Userware filed a motion *in limine* to exclude evidence of any oral under-standing between Esbensen and Rhodes concerning an implied "good cause" requirement for termination. The trial court agreed largely with Userware. It concluded Esbensen's employment contract was an integrated one-year agreement and Esbensen was precluded from "introduc[ing] parole [*sic*] evidence that his employment was to continue and that his contract was to be renewed so long as he performed his job capably . . . ." Esbensen was allowed to seek contract damages for breach of contract but those damages were limited to what would have been earned for six months following the expiration of the contract's one-year term. Because of the limitation of damages, Userware stipulated to judgment in the amount of $15,000, the maximum amount recoverable under the court's *in limine* rulings, and Esbensen proceeded with this appeal to challenge the correctness of those determinations.[2] (See *Building Industry Assn.* v. *City of Camarillo* (1986) 41 Cal.3d 810, 816 [226 Cal.Rptr. 81, 718 P.2d 68].)

### DISCUSSION

Userware makes a three-pronged argument in support of the trial court's ruling excluding Esbensen's proffered evidence of an oral agreement that he would not be terminated except for good cause. According to Userware, paragraph V of the contract, which provides for termination before the

---

[2]The trial court heard evidence, presumably pursuant to Evidence Code section 405 (see *Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 146 [124 Cal.Rptr. 845]), before making its *in limine* rulings. Esbensen testified concerning the alleged oral agreements with Rhodes, although the particulars of the discussion were disputed by Rhodes. For the purposes of this appeal we assume the court or jury would have accepted Esbensen's version of the events.

expiration of the one-year term, allows for termination at any time for any reason. Thus, Esbensen's testimony is assertedly inadmissible as inconsistent with this portion of the written contract. In any event, even if the employment agreement was not terminable at will, Userware asserts the parties intended the written agreement to be final, complete and exclusive, precluding the admission of parol evidence. Finally, even if the agreement is not integrated, Userware argues the oral understanding Esbensen seeks to prove is inconsistent with the one-year term specified in paragraph IV of the written contract and the parol evidence is therefore inadmissible on this additional ground as well.

Esbensen responds that paragraph V does not make the contract terminable "at will"; indeed, such an interpretation would make the one-year term of the contract meaningless. He goes on to argue why the contract is not integrated and concludes the parol evidence suggesting an oral understanding that the contract would be renewed perpetually is not inconsistent with paragraph IV and is admissible.

### 1. *Is the employment relationship terminable at will?*

■ We agree with Esbensen that paragraph V does not make the contract terminable at will. Userware relies on several cases in which the employment contracts specified that the employee could be terminated "at any time" and "for any reason." (See *Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 268 [235 Cal.Rptr. 279]; *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 473, fn. 1 [199 Cal.Rptr. 613]; see also *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 309, 316 [231 Cal.Rptr. 820].) Here, in contrast, the "for any reason" language relied on by Userware (*ante*, p. 635) does not refer to the grounds for termination but rather explains that Userware is not obliged to pay salary but is obliged to continue paying Esbensen's commission regardless of the reason for the termination. The written contract, as we read it, is silent on the acceptable grounds for termination.

### 2. *Was the written contract fully integrated?*

Even if the employment contract is not terminable at will, Userware argues the written agreement is fully integrated, precluding the admission of extrinsic evidence to add additional terms. ■ In contract law, "integration" means the extent to which a writing constitutes the parties' final expression of their agreement. To the extent a contract is integrated, the parol evidence rule precludes the admission of evidence of the parties' prior or contemporaneous oral statements to contradict the terms of the writing,

although parol evidence is always admissible to interpret the written agreement. (See 2 Witkin, Cal. Evidence (3d ed. 1986) § 975, p. 920.)

Obviously where following negotiations the parties execute a written agreement, that agreement is at least "partially" integrated and parol evidence cannot be admitted to contradict the terms agreed to in the writing. (E.g., Calamari & Perillo, Contracts (3d ed. 1987) § 3-2, p. 136.) Evidence of related oral understandings, however, is admissible to prove additional terms of the contract not inconsistent with the express language of the writing. (Code Civ. Proc., § 1856, subds. (a) and (b); 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) The Parol Evidence Rule, § 32.1, pp. 1122 (rule 3), 1123-1124.)

If a writing is intended by the parties as a "complete and exclusive statement of the terms of the agreement" (see Code Civ. Proc., § 1856, subd. (b)), the contract is "fully" or "completely" integrated and parol evidence is inadmissible even to add terms not inconsistent with the writing. Obviously, such a determination must be based on proof of the parties' intent (see, e.g., *Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385-1386 [265 Cal.Rptr. 412]) and a critical element in that proof is the nature of the alleged consistent oral understanding. (*Masterson* v. *Sine* (1968) 68 Cal.2d 222, 226 [65 Cal.Rptr. 545, 436 P.2d 561].) The Supreme Court has held that in order to bar evidence of a consistent oral understanding, the court must convince itself at a minimum that such an understanding would not "naturally" have been excluded from the writing. (*Id.* at p. 228.)[3]

---

[3]In determining the extent of an integration, some courts have suggested that a factor to be considered is whether the terms of the alleged oral understanding are inconsistent with the written contract. The apparent source of this principle is the decision in *Brawthen* v. *H & R Block, Inc., supra,* 52 Cal.App.3d 139, 146. The *Brawthen* language has been relied on in several later cases (e.g., *Marani* v. *Jackson* (1986) 183 Cal.App.3d 695, 702-703 [228 Cal.Rptr. 518]; *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d 299, 314) and has even been cited by this court on at least one occasion (see *Mobil Oil Corp.* v. *Rossi* (1982) 138 Cal.App.3d 256, 266 [187 Cal.Rptr. 845]). *Brawthen* cites *Masterson* v. *Sine, supra,* 68 Cal.2d at pages 225-228 in support of this assertion, but *Masterson* nowhere states that a conflict between the oral and written agreements is a factor tending to show that the written agreement is not integrated. As we have noted, even where a contract is not fully integrated, parol evidence is not admissible to supply terms which are inconsistent with the written agreement. (Code Civ. Proc., § 1856, subds. (a) and (b).) Thus, the question of conflict between written and oral agreements is irrelevant to the question of integration. Indeed, in rejecting the argument that the parol evidence rule as applied to fully integrated agreements is justified by the policy judgment that written evidence is more accurate than human memory, *Masterson* explained that this policy could be more narrowly served "by excluding parol evidence of agreements that directly contradict the writing." (68 Cal.2d at p. 227.) We thus read *Masterson* to support the conclusion that the question of integration is determined irrespective of a conflict between the written and oral agreement.

Here, the court found that the agreement was "integrated" without specifying whether the integration was partial or complete.[4] Whatever the trial court's intent, we independently conclude the written employment contract represents only a partial integration. Here as in *Masterson*, the written contract "does not explicitly provide that it contains the complete agreement . . . ." (68 Cal.2d at p. 228.) Moreover, as we explained earlier, the contract is silent as to the grounds for termination. It is hardly unnatural to think that small business entrepreneurs and a computer programmer, unsophisticated in legal matters and unadvised by lawyers, might have discussed those uncertainties and resolved them orally.[5] (*Id.* at pp. 228-229.) Because it is only by implication that we can determine what the parties intended with regard to the proper bases for termination, that reasoning process ought to be informed by whatever relevant extrinsic evidence exists which casts light on the parties' intent.

### 3. Was the parol evidence offered to prove a consistent oral understanding?

Despite the parties' focus on the question of integration, our conclusion that the agreement was only partially integrated does not fully resolve the case. Assuming partial integration, parol evidence is admissible only to prove an oral term of the contract not inconsistent with the written memorialization. Parol evidence may not be offered to contradict the terms of even a partially integrated writing.

---

[4]Although agreeing it is a question for the trial court rather than the jury (see Code Civ. Proc., § 1856, subd. (d)), cases have disagreed on whether the issue of "complete" integration is a question of law or a question of fact. Several cases have suggested that a substantial evidence standard of review applies to limit the ability of appellate courts to overturn trial court determinations. (See, e.g., *Mobil Oil Corp.* v. *Handley* (1978) 76 Cal.App.3d 956, 961 [143 Cal.Rptr. 321]; *Salyer Grain & Milling Co.* v. *Henson* (1970) 13 Cal.App.3d 493, 500 [91 Cal.Rptr. 847].) Others have termed the issue a question of law and resolved it without deference to the trial court's factual findings, at least where the foundational extrinsic evidence is not in conflict. (*Brawthen* v. *H & R Block, Inc.* (1972) 28 Cal.App.3d 131, 137 [104 Cal.Rptr. 486]; see also *Sullivan* v. *Massachusetts Mut. Life Ins. Co.* (9th Cir. 1979) 611 F.2d 261, 264 [applying California law].)

We read *Masterson* v. *Sine, supra,* 68 Cal.2d 222, the seminal California Supreme Court case on the issue, to treat it as a question of law subject to plenary appellate review where the foundational extrinsic evidence is not in conflict. (*Id.* at pp. 228-231.) Certainly, such an approach is consistent with the Supreme Court's analysis of other issues involving the interpretation of a written instrument. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 and fn. 2 [44 Cal.Rptr. 467, 402 P.2d 839]; see *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455].) We choose to employ that analysis here, recognizing that even if a substantial evidence standard of review were to apply it would not change the result.

[5]The evidence indicated that oral agreements were standard at Userware. Esbensen testified that he was the only Userware employee to have a written contract.

Esbensen sought to introduce evidence of his conversations with Rhodes to the effect that Userware had promised to renew the annual contracts so long as Esbensen performed competently. Userware argues that such an agreement would be flatly inconsistent with the written contract which provides, on one hand, for a term of one year and then creates a separate termination procedure which under some unspecified set of circumstances allows for dismissal before the expiration of the contract term. Even if it could not fire Esbensen for any reason at any time, at a minimum, Userware asserts, the fact that the contract was for a term of one year gives it the right to terminate Esbensen at the *end of the year* for any reason.[6]

We agree with Userware that the one-year term provision of the contract must have some meaning. We disagree, however, that the only possible reason for including this provision was to allow for Esbensen's termination at the end of the year for any reason. As Esbensen points out, the contract specifically provided that his salary would be reviewed on an annual basis. If the written contract was supplemented by an oral understanding that the one-year agreements would be renewed absent good cause not to do so, it might be that the one-year contract term merely reflected the interval between salary reviews. Under such circumstances, "good cause" for nonrenewal would necessarily include the parties' failure to agree on the terms for renewal. In effect, the parties would be obligated to negotiate in good faith at the end of each year toward the goal of renewal on mutually acceptable terms.

Such a result is consistent with the court's conclusions in *Brawthen* v. *H & R Block, Inc., supra,* 28 Cal.App.3d 131. In *Brawthen,* the plaintiff accepted employment pursuant to a written contract which provided that the agreement would govern for a period of two years " 'and thereafter shall automatically renew from year to year unless either party gives written notice of termination ninety days prior to renewal date. . . .' " (*Id.* at p. 134.) They sought to introduce evidence of contemporaneous oral representations by the employer that the contract would never be terminated except for good cause. The Court of Appeal held such evidence should have been admitted. (*Id.* at p. 136.)

---

[6]Even if good cause was required for it to terminate Esbensen before the expiration of the one-year term, Userware recognizes if it could discharge him for any reason at the end of the year the judgment must nonetheless be affirmed. This is because the trial court limited Esbensen to proving damages measured by the commissions he would have earned for "six months following expiration of the contract's one-year term" (see *ante,* p. 635), and Userware stipulated to judgment in the amount of $15,000 as the maximum amount which would have been recoverable under the trial court's rulings. Thus, even if Userware breached the contract by firing Esbensen without good cause before the one-year agreement expired, as long as damages were no more than as limited by the trial court there would be no basis for reversal.

Because Brawthen worked for Block for more than two years, he, like Esbensen, was employed pursuant to a contract with a term of one year at the time of his termination. He, like Esbensen, sought to prove an oral understanding that the one-year contracts would be renewed so long as he performed competently. The court in *Brawthen* held that because the written contract did not specify what if any grounds would suffice to justify a failure to renew the contract, parol evidence was admissible to establish an oral agreement as to the acceptable grounds. We reach a similar conclusion here.

It could be argued that the failure to specify grounds necessarily implies that *any* reason was acceptable. ■ As we have explained, however, the fact that something is presumed or implied in the absence of an express statement to the contrary does not preclude a party to an incomplete written contract from attempting to demonstrate an express oral agreement contrary to the term which would otherwise be presumed or implied.

■ We wish to emphasize that our conclusion parol evidence should have been admitted is but a small step on Esbensen's path to ultimate success. A jury must yet determine that the oral representations alleged by Esbensen were in fact made. Assuming they were, the jury must further determine the exact nature of the oral agreement between Rhodes and Esbensen. Assuming this is found to be an understanding that the contract would be perpetually renewed unless there was good cause not to do so, the jury must finally decide whether Userware had "good cause" to terminate Esbensen.

### DISPOSITION

Judgment reversed. Appellant shall recover costs for this appeal.

Todd, J., and Huffman, J., concurred.

A petition for a rehearing was denied January 7, 1993, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied February 25, 1993. Panelli, J., was of the opinion that the petition should be granted.