Filed 9/15/16  Zhou v. Ruess CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| JANE ZHOU, | C073405 |
| Plaintiff and Appellant, | (Super. Ct. No. 168934) |
| v. | |
| WILLIAM R. RUESS et al., | |
| Defendants and Respondents. | |

Plaintiff Jane Zhou sued her former employer and its partners for breach of contract arising from their terminating her employment.  Trial was bifurcated, and the court tried the sole issue of whether plaintiff was an at-will employee.  It determined she was.  The written agreement she claimed established a specific term of employment was ambiguous and not an integrated agreement.  The court thus relied upon extrinsic evidence to conclude the agreement did not establish a specific term of employment.

1

Plaintiff appeals. She contends the trial court erred by admitting and relying upon extrinsic evidence. She argues the agreement expressly established a specific term of employment, and, because the parol evidence contradicted the agreement's terms, the evidence should not have been admitted. She also contends the admitted evidence does not establish she was hired at-will.

We affirm the judgment. The agreement is susceptible to the interpretation proffered by defendants, and substantial evidence supports the trial court's resolution of conflicting facts and its interpretation of the agreement.

FACTS

Defendant Redding Pathologists is a partnership. In May 2008, the partners were defendants William R. Ruess, M.D., Don V. Stanton, M.D., Tikoes A. Blankenberg, M.D., and Mark W. Ramus, M.D. Defendant Sean D. Pitman, M.D., was an employee in 2008 and later became a partner. Blankenberg was responsible for the partnership's personnel decisions. For convenience, we refer to this group of defendants collectively as defendants.

In early 2008, plaintiff, then working as a pathologist for a different pathology practice, called Blankenberg to see if there were any openings at Redding Pathologists. At the time there were none. In May 2008, Blankenberg called plaintiff, said they may have an opening, and asked if she was still interested. She was. He invited her to meet with him and the other partners.

The meeting occurred at Ruess's home. Over the course of two hours, the partners asked plaintiff about her current job to understand why she was unhappy there. They asked her about her qualifications and background. She presented her resume, and they discussed it. They discussed employment with her. In his deposition, Blankenberg stated the partners outlined at the meeting in very general terms how employees become partners, that employees have a trial period of three years, and that the partners expect certain things to happen during that trial period. They expected collegial behavior,

2

professional behavior, good interactions with clients, business development, and a high quality of work.

In his deposition, Blankenberg stated he did not think he discussed at this meeting that plaintiff would not "be around" if these standards were not met, or that she could be fired for any reason. Ruess testified that no one at the meeting mentioned plaintiff's possible employment would be at-will.

Plaintiff testified that none of the defendants at the meeting discussed what they had in mind for her, and employment was not mentioned.

Sometime after the meeting, the partners agreed to hire plaintiff as an employee. They agreed what her salary would be for the first three years, and that they would consider partnership for her at the end of three years. There was no discussion among the partners about whether to hire her as an at-will employee because, in Ruess's words, it "was obvious." The partnership never entered into employment contracts for specific terms. The partnership's practice was to hire pathologists as at-will employees. The first three years of employment were a trial period, at the end of which the partners would decide whether to make the employee a partner. The employee was not guaranteed employment during the three-year trial period. The short trial period and guaranteed vote on partnership were enhancements to attract good employees.

On May 29, 2008, Blankenberg called plaintiff and told her the partners had decided to hire her. He asked her to come to his office that afternoon. She did, and he gave her a letter dated May 29, 2008, offering her employment. The letter reads in pertinent part:

"This will serve as a letter of intent from Redding Pathologists to hire you as an employee Pathologist commencing by May 30, 2008. Annual salary and time off will be as follows:

3

"Year 1:        $200,000       8 weeks time off

"Year 2:        $220,000       8 weeks time off

"Year 3:        $240,000       8 weeks time off

"Time off includes CME activities.  Additionally you have 10 Fridays off a year.

"Redding Pathologists will pay your malpractice insurance premium . . . and your medical staff dues.

"Heath insurance will be provided under Redding Pathologists group policy. . . . You will be included in Redding Pathologists 401(k) Profit Sharing Plan and eligible July 1st or January 1st following one year of employment.

"During your 3-year employment we expect you to be fully involved in our medical practice, and to accept increasing responsibilities in the Partnership's business. At the end of your 3-year employment, advancement to Partnership status will be determined by unanimous vote of the Partners present at that time.  [¶]  . . .  [¶]

"Please sign one copy of this letter and return it to me.  If you have any questions or problems, please don't hesitate to call."

Blankenberg asked plaintiff to review the letter, and he asked her if she had any questions about it.  She did.  She said the contract looked short and was unlike anything she had received before.  She attempted to negotiate different terms.  She asked if the partnership would pay for her continuing education.  Blankenberg said it would not.  She asked to raise the salary by $10,000.  Blankenberg refused.  He was not authorized to negotiate new terms without the consent of all of the partners.  She asked about health insurance coverage and the 401K plan, but Blankenberg could not answer those questions.  He told her that Barbara Boyd, the partnership's human resources coordinator, would explain those matters to her.  There were additional documents and policies plaintiff would need to review that were pertinent to her that would answer her questions.

4

Blankenberg testified that half of the time he and plaintiff were meeting together, they talked about the employment trial period and how the partnership functioned. In "[his] words," he told her she would be an at-will employee. He did not use the term "at-will," but he outlined for her what was expected of her. If these expectations were not met, "she wouldn't be there" or "wouldn't be around." He explained the trial period to her and told her of three or four different ways that if her performance was not "there," she would not be there. Other terms of employment were contained in the personnel policies and procedures manual (personnel manual), an employee handbook, and an acknowledgement. These were the other documents he had mentioned to plaintiff, and they specifically included the phrase "at-will."

Plaintiff testified that none of these matters were discussed when she met with Blankenberg. She stated Blankenberg did not tell her that other documents would become part of this contract, that she could be terminated before the three-year period was up for any reason, or that the first three years were a trial period. Plaintiff, at the time of her meeting with Blankenberg, did not know what an at-will employee was; she had not even heard of that term.

After their discussion, plaintiff signed the letter, and then Blankenberg signed the letter on behalf of defendants.

After the meeting, plaintiff called Blankenberg and asked whether the partnership would pay for tail malpractice insurance, a type of insurance that would protect plaintiff if she were to leave her employment. By letter dated, May 30, 2008, Blankenberg confirmed the partnership would pay for her tail coverage "when you terminate your employment with this group regardless of whether it is your decision or Redding Pathologists decision for you to terminate your employment."

The day after the meeting, May 30, plaintiff arrived at Redding Pathologists and met with Barbara Boyd for orientation. Boyd's usual orientation practice included having the new employee read the personnel manual and a safety manual in a conference

5

room.  Boyd remembered meeting with plaintiff and handing her the policy manuals to read in the conference room.

The remainder of the orientation consisted of Boyd and the new hire going through a checklist of items to discuss.  Some of the items to be covered included whether the employee had actually read the personnel manual; whether the employee received an employee handbook, which was a summary of the personnel manual; and whether the employee signed an acknowledgment stating he or she received the handbook and read the acknowledgment.  As Boyd went through the checklist, she placed her initials after each item she discussed.  When she finished, she had the new employee review the checklist line by line and place his or her initials after each item.

After giving the employee a copy of the employee handbook, Boyd gave the employee the acknowledgement form asking the employee to acknowledge receiving the handbook.  She encouraged the employee to read the form before signing it.  The employee signed the form in Boyd's presence.

As she went through the checklist, Boyd put papers and copies of relevant documents in a manila envelope.  At the end of her orientation, she gave the envelope with its contents to the employee, explaining the documents were for the employee to keep.

Boyd recalled going through the checklist with plaintiff, and she recognized her own initials on the checklist she used with plaintiff, but she could not specifically recall plaintiff initialing each item.  On the checklist, Boyd wrote her initials and quotation marks to note that plaintiff read and understood the personnel manual, and that she received the employee handbook and signed the acknowledgement.  The checklist also shows that the employee initialed those same items.

The personnel manual, the employee handbook, and the acknowledgment Boyd gave to plaintiff all contain statements that employees generally are hired at-will.  The title page of the personnel manual contains the following statement:  "This manual is not

6

intended to be and should not be construed as an express or implied contract of employment at Redding Pathologists or as a guarantee of any specific treatment in any specific situation. Absent a specific written contract of employment to the contrary, all employment with Redding Pathologists is 'at-will' and either the employee or the Company may terminate the employment relationship at any time, for any reason, with or without cause or notice. It is understood that no supervisor, manager, or representative of Redding Pathologists other than a Pathologist has the authority to enter into any agreement with any current or prospective employee for employment for any specified period or to make any promises or commitments contrary to the foregoing."

The personnel manual contains three additional, similar writings that state all employment with the partnership is at will.

The first page of the employee handbook welcoming the employee to the business contains the following writing: "Please remember that this handbook is not a contract guaranteeing employment for any specific duration. Although we hope that your employment relationship with us will be long-term, either you or Redding Pathologists may terminate this relationship at any time, for any reason, with or without cause or notice. Please understand that no supervisor, manager or representative of Redding Pathologists other than a Pathologist has the authority to enter into any agreement with you for employment for any specified period or to make any promises or commitments contrary to the foregoing."

The employee handbook contains two additional, similar writings that state employment is at will.

The acknowledgement form is similar, except that it does not contain language authorizing a pathologist to enter into employment contracts for a specified term. It reads in part: "I understand that this handbook is not a contract guaranteeing my employment for any specific duration and that the Company or I may terminate the employment relationship at any time, for any reason, with or without cause or notice. [¶] I understand

7

that no supervisor, manager or representative of Redding Pathologists has the authority to enter into any agreement with any current or prospective employee for employment for any specified period or to make any promises or commitments contrary to the foregoing." The acknowledgment form is signed by "Jane Zhou."

Plaintiff recalled receiving from Boyd at the end of the day a large, thick envelope sealed with a metal clip. She did not know what was inside the envelope because she never opened it.

Plaintiff testified she never saw the personnel manual or the employee handbook. She recalled she was put into a conference room and given two binders to read, but she did not know if she actually read the personnel manual at that time. She also could not determine whether the initials on the checklist were hers, and she did not recall receiving the items the checklist noted had been given to her.

The acknowledgment form has plaintiff's name signed on it, but plaintiff testified she could not determine whether the signature was hers. She did not remember seeing the form or signing it. She did not read all of the documents she signed that day. She stated if the signature on the acknowledgment form was hers, she did not read the form because she was given many papers to sign that day and she signed some without reading them.

Blankenberg testified that when the partnership first hired him, it indicated there would be a trial period where he would work as an employee, and at the end of three years, he would be considered for partnership. He was not guaranteed employment or to become a partner, and he could have been let go at any time. He understood he could have been let go at any time for any reason.

Blankenberg was involved in hiring four or five other pathologists. The process resembled that used to hire plaintiff. The candidates were told "they were at-will employees, or essentially those words." One of those hires did not become a partner. He

8

was employed for two years, seven or eight months, and then he quit "before we fired him."

Blankenberg helped prepare the personnel manual with assistance from a management group named HR Central.  He drafted the offer letter without the assistance of HR Central or an attorney.

The offer letter was a template the partnership had used for years for hiring pathologists.  The paragraph that discussed the "3-year employment" was consistent with the offer letters given to other pathologists.  Blankenberg testified the letter's use of the year one, year two, and year three language enumerated the salary and bonus the pathologist would receive through the trial period if the pathologist continued with the partnership for that length of time.  The phrase "3-year employment" used in the letter referred to the maximum trial period the partnership would offer an employee.  The partnership never intended by means of the letter to give up any rights it held to terminate plaintiff.

Blankenberg testified that plaintiff never used the phrase "three year contract" with him until after she had been terminated.  During the meeting at which the partnership terminated her employment, plaintiff did not assert she could be fired only for cause during the first three years of her employment.  She also did not assert that the partnership had to buy out the remaining years on her contract.

Blankenberg stated the partnership maintained an at-will employment policy because they work in a dangerous environment, and a mistake by a pathologist could maim, disfigure, or kill a patient.  The partnership believed it had to be able to terminate employees and partners quickly if they were not functioning.

Asked at trial by plaintiff's counsel whether the partnership intended to be able to terminate plaintiff "for no reason whatsoever,"  Blankenberg stated the partnership was an at-will employer, and employees were at-will just like the partners were at-will.  It was a necessity of their business.  Counsel introduced Blankenberg's response in his

9

deposition to the same question, where Blankenberg stated, "We would never terminate anybody for no reason."

TRIAL COURT'S JUDGMENT

In her complaint, plaintiff alleged the May 29, 2008, letter of intent from Blankenberg was a written employment contract under which the partnership granted her a specific employment term of three years. The partnership terminated her employment on June 9, 2009.

Plaintiff originally alleged eight different causes of action. However, the court at plaintiff's request dismissed all of her causes of action except one for breach of an employment contract. The parties stipulated to bifurcate trial for the court to decide first whether plaintiff had been an at-will employee.

Following trial, the court determined plaintiff had not shown her employment was not at-will. Labor Code section 2922 establishes a presumption that employment in California is at-will, and plaintiff had not overcome the presumption. The trial court first determined it could consider extrinsic evidence to establish the parties' intentions. It could do so because the May 29 letter of intent was "far from being clear." The letter's references to a three-year employment did not clearly establish a guaranteed term of employment, as they were made in the context of a period of time after which plaintiff would be considered for partnership.

The court also determined it could consider extrinsic evidence because the letter of intent was not an integrated agreement. It was not integrated because it contained no integration clause and did not detail many essential terms of an employment relationship, such as employment duties and benefits. It also did not discuss early termination by either side or what would happen at the end of the three-year period.

Relying on extrinsic evidence, the trial court determined the letter of intent was just that—a letter offering employment. An enforceable employment contract did not exist until the following day after plaintiff executed the various employment documents,

10

including the at-will acknowledgment.  The court ruled the references to a three-year employment were "made in the context of what salary [plaintiff] could expect if she continued employment during that period and in the context of when she would be considered for partnership.  The Letter does <u>not</u> make certain that the employment is guaranteed for three years, and the Court finds there is insufficient evidence that such a guarantee of continued employment was otherwise <u>ever</u> made to Plaintiff. . . .  [¶]  Given the totality of the evidence, the Court finds that the Plaintiff was duly informed of her status as an at-will employee at the outset of her employment, and that she expressly accepted this term."  (Original underscoring.)

The trial court based its last statement on finding that plaintiff, during her orientation with Boyd, received documents replete with references to her employment being at-will, and she signed the acknowledgment form indicating she reviewed them.

The court entered judgment in favor of defendants.  Plaintiff appeals.

DISCUSSION

California law presumes an employment "having no specified term" is at-will. (Lab. Code, § 2922 (section 2922).)  "An at-will employment may by ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice.  [Citations.]"  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335 (*Guz*).)

On the other hand, an employment "for a specified term" may be terminated only for cause.  (Lab. Code, § 2924 (section 2924).)  Specifically, it may be terminated for "any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."  (*Ibid*.; *Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 39.)

An express written agreement that an employer will not terminate an employee except for good cause may rebut section 2922's presumption of at-will employment. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677.)  Such express written

11

promises may be included in contracts of employment, personnel policies, and offer letters. (See *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 (*Dore*) [signed offer letter became express written employment contract]; *Guz, supra,* 24 Cal.4th at p. 344.)

A plaintiff alleging an agreement to terminate employment only for good cause bears the burden to rebut the statutory presumption of section 2922. (See *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.)

Plaintiff contends her employment was not at will. She claims the letter of intent is an express agreement by defendants to hire her for a specified term of three years. She argues that because the letter includes a specified term, her employment was not subject to section 2922's presumption of at-will employment. Rather, it was subject to section 2924's prescription to terminate only for cause.

Plaintiff contends the trial court erred in admitting extrinsic evidence. She claims it was error because the letter of intent was an integrated agreement at least as to her term of employment, and the trial court relied on extrinsic evidence that contradicted the letter's express terms. Plaintiff also asserts it was error to admit extrinsic evidence because the letter of intent was not ambiguous or susceptible to the meaning argued by defendants.

Plaintiff contends that even if the trial court correctly admitted extrinsic evidence, no substantial evidence supports the court's conclusion that she did not overcome the statutory presumption of at-will employment. She argues there was no evidence supporting a finding that she agreed the partnership could fire her at will. She claims Blankenberg's deposition testimony contradicted his trial testimony, his testimony showed defendants intended to be able to fire plaintiff only for cause, and the letter of intent was an express employment agreement by a pathologist that the personnel manual allowed.

Defendants contend the trial court correctly determined that plaintiff did not overcome the statutory presumption of at-will employment. They argue the letter of intent does not contain express wording that would establish a specified term of employment or would limit their right to terminate her at will.

Defendants also assert the trial court properly reviewed and admitted parol evidence for a number of reasons. First, they claim it did so to establish the letter of intent was not an integrated agreement and, as a result, to complete the parties' full agreement. Second, even if the letter of intent was an integrated agreement, they argue the trial court lawfully considered parol evidence to determine the letter was ambiguous. Third, they assert the court correctly determined the letter of intent was ambiguous, and it lawfully admitted parol evidence to resolve the ambiguity and harmonize the terms of the letter of intent with the policy documents plaintiff signed. Fourth, defendants contend the evidence supports the trial court's determination that plaintiff did not overcome the statutory presumption that she was an at-will employee.

We conclude the trial court lawfully admitted the evidence to interpret an ambiguous contract provision, and that the court's interpretation is supported by substantial evidence.

This case hinges on the meaning of the term "3-year employment" as used in the letter of intent, and on the extent to which the trial court used, and the extent to which we can use, extrinsic evidence to interpret that term. The parol evidence rule, with certain exceptions, prohibits the introduction of extrinsic evidence, oral or written, to vary or add to the terms of an integrated written contract. (*Masterson v. Sine* (1968) 68 Cal.2d 222, 225.) If the contract is an integrated agreement, the court may admit parol evidence to find and interpret an ambiguity, patent or latent, so long as the evidence does not add to or vary the agreement's terms. (*Ibid.*; Code Civ. Proc., § 1856, subds. (a), (g).)

If a party seeks to introduce extrinsic evidence, the first issue for the trial court to resolve usually is whether the agreement being interpreted is an integrated agreement.

"In contract law, 'integration' means the extent to which a writing constitutes the parties' final expression of their agreement. To the extent a contract is integrated, the parol evidence rule precludes the admission of evidence of the parties' prior or contemporaneous oral statements to contradict the terms of the writing, although parol evidence is always admissible to interpret the written agreement. [Citation.]" (*Esbensen v. Userware Internat., Inc.* (1992) 11 Cal.App.4th 631, 636-637 (*Esbensen*).)

In determining whether the letter of intent was an integrated agreement, a question of law, the court was free to look beyond the face of the writing and to review parol evidence and the surrounding circumstances to determine whether the parties intended the writing to be an integrated agreement. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1510.) By doing so, the trial court here found numerous other terms of the employment relationship that had not been included in the letter of intent, and it correctly concluded the letter was not a fully integrated agreement.

However, as plaintiff notes, the trial court did not address whether the letter of intent was a partially integrated agreement. Even if a written contract does not contain all of the parties' terms of agreement, it may be integrated to the extent the terms are in writing. "Obviously where following negotiations the parties execute a written agreement, that agreement is at least 'partially' integrated and parol evidence cannot be admitted to contradict the terms agreed to in the writing. [Citation.]" (*Esbensen, supra,* 11 Cal.App.4th at p. 637.)

The letter of intent was at least a partially integrated employment contract. When plaintiff and Blankenberg executed the letter, they created an enforceable employment contract. There is no dispute both were capable of contracting, and they manifested their consent to the letter's terms by signing it. The agreement had a lawful object, the hiring of plaintiff as an employee pathologist. The agreement was also based on sufficient consideration. (Civ. Code, § 1550.)

14

Because the letter of intent is a partially integrated agreement, we move to the crux of this case. The trial court was free to admit extrinsic evidence to resolve an ambiguity in the letter of intent so long as the evidence did not add to or vary the terms of the letter of intent. " 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37, citing numerous authorities.)" (*Dore, supra,* 39 Cal.4th at p. 391.)

"In such cases, the court engages in a two-step process: 'First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine "ambiguity," i.e., whether the language is "reasonably susceptible" to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.]' [Citation.] The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. [Citation.] The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. [Citation.]" (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.)

Our first step, then, is to determine whether the letter of intent is reasonably susceptible to the interpretation urged by defendants. We conclude it is. Defendants contend the letter's references to a "3-year employment" and its three-year salary schedule describe a three-year trial period during which plaintiff would work as an employee, and at the end of the period, if plaintiff was still employed, she would be

15

considered for becoming a partner. The three-year period described the partnership track; it did not guarantee employment for a specific term.

Blankenberg testified he explained the three-year trial period to plaintiff in his office when he presented the letter of intent to her. He explained she would not be there during the three-year period if she did not satisfy the firm's expectations. He also told her there were other documents and policies she would sign that were part of her employment agreement. The following day, Boyd gave plaintiff the personnel manual to review, a copy of the employee handbook, and the acknowledgement form. Plaintiff signed the acknowledgment form, agreeing she understood her employment was terminable at-will.

Blankenberg also testified that defendants' practice was to hire pathologists as at-will employees subject to a partnership-track trial period. Defendants had used the form letter of intent with its three-year employment references with at least four or five other employee pathologists. All became partners except one, who resigned before he was fired, and he did this before the three-year period expired.

This evidence provides a meaning to which the term "3-year employment" is reasonably susceptible: One had to be an employee for three years—a "3-year employment"—before becoming a partner. The evidence in support of that meaning does not add to or vary from the ambiguous language in the letter. The letter of intent set forth the salaries plaintiff would receive during the three years she would work as an employee and not as a partner, but that information did not necessarily guarantee she would be employed for those three years except for cause.

Having determined the letter of intent is ambiguous, i.e., reasonably susceptible to the meaning urged by defendants, we conclude the trial court did not err in admitting the extrinsic evidence to aid in interpreting the letter.

Our next step is to determine whether the trial court, using the extrinsic evidence, reached a correct interpretation. To interpret the letter of intent, the court resolved

16

evidentiary conflicts and made findings of fact. Accordingly, because the parol evidence was in conflict, we review the trial court's ruling for substantial evidence.

The facts support the trial court's interpretation of the letter of intent. The court determined that Blankenberg informed plaintiff before she signed the letter of intent that the three-year period was a trial period for purposes of becoming a partner, and that she could be terminated before that time if she did not meet defendants' expectations. He told plaintiff that the other documents she would sign were part of the employment contract. The court also found that Boyd in fact gave plaintiff the personnel manual to review, the employee handbook to keep, and the acknowledgment form to sign, and that plaintiff signed the acknowledgment and accepted the at-will employment.

This evidence sufficiently supports the trial court's conclusion that the term "3-year employment" did not refer to a specific term of employment, but rather referred to a trial period for purposes of being considered a partner. The phrase did not guarantee employment during that period. As a result, plaintiff failed to overcome the statutory presumption of at-will employment.

Plaintiff contends no substantial evidence supports the trial court's determination that she was an at-will employee. First, she argues the trial court should not have considered Blankenberg's trial testimony because it contradicted his earlier deposition testimony. Blankenberg testified that during the initial meeting at Ruess's home, he told plaintiff "in [his] words" she would be employed at will. Defense counsel introduced Blankenberg's deposition testimony, where Blankenberg stated he did not remember if he or his partners during that meeting explained to plaintiff what would happen to her if their expectations were not met or that they could fire her during the initial three-year period for any or no reason. Asked if the partners told plaintiff her employment would be at will, Blankenberg stated, "We did not use those terms." Neither he nor his partners said anything to plaintiff during the meeting at Ruess's home that if she did not meet expectations, she would be fired.

17

Counsel introduced Blankenberg's deposition testimony again when, after asking Blankenberg if he told plaintiff during their meeting in his office she was an at-will employee, Blankenberg said, "In my words I did. And I put—that was my verbal response. And my written documentation, that is in the remainder of the documents that I prepared." In his deposition, Blankenberg stated that during his meeting with plaintiff, they discussed how one becomes a partner, that it was a trial period, and that she would not be there if she did not meet the partnership's expectations.

But Blankenberg's deposition testimony does not contradict his trial testimony in important respects. It does not contradict his testimony that he informed plaintiff in his office that her employment agreement included the firm's policies and procedures she would see and sign the following day. It does not contradict his testimony that he informed plaintiff the first years were a trial period for her to earn partnership, and that she would not be there if she failed to live up to defendants' standards. Nor does it contradict plaintiff's written acknowledgement that she was an at-will employee. Blankenberg's deposition testimony did not establish plaintiff was not an at-will employee.

Plaintiff contends the evidence shows Blankenberg intended to fire her only for cause. She claims Blankenberg's statement that she would not be there if she did not meet defendants' expectations, and his deposition testimony that defendants "would never terminate anybody for no reason," show that defendants never intended to have the ability to terminate her without cause. But these statements do not contradict the written policies stating in effect that defendants retained *the right* to terminate without cause.

Plaintiff contends the letter of intent is the type of written employment agreement for a specified term allowed by some of the at-will provisions contained in both the personnel manual and the employee handbook. Those provisions stated employees were hired at-will, and "that no supervisor, manager or representative of Redding Pathologists other than a Pathologist has the authority to enter into any agreement with you for

18

employment for any specified period or to make any promises or commitments contrary to the foregoing." Plaintiff argues Blankenberg was a pathologist who had the authority to enter into any agreement with her for employment for a specified period, and the letter of intent was such an agreement.

The personnel manual and the employee handbook may have given Blankenberg the authority to enter into for-cause employment agreements, but his testimony indicated he did not exercise that authority in this or any other instance of hiring a pathologist. It was defendants' practice and procedure to hire pathologists only as at-will employees. They used the same form letter of intent with other hires that they used with plaintiff. And, they did not allow Blankenberg to negotiate contracts. Any negotiation or change in the terms of the form letter would have to be agreed upon by all of the partners. Blankenberg offered plaintiff what the partners had authorized for employees, and no more. Substantial evidence thus supports the trial court's implied conclusion that Blankenberg did not offer plaintiff guaranteed employment for three years, despite the personnel manual and employee handbook stating he had the authority to do so.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendants. (Cal. Rules of Court, rule 8.278(a).)

                                                       NICHOLSON     , J.

We concur:

      BLEASE          , Acting P. J.

      MAURO         , J

19