Filed 3/14/24  Axis Surplus Ins. Co. v. Aletheia Research and Management CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| AXIS SURPLUS INSURANCE COMPANY,<br><br>Plaintiff, Cross-Defendant, and Appellant,<br><br>v.<br><br>ALETHEIA RESEARCH AND MANAGEMENT, INC.,<br><br>Defendant, Cross-Complainant, and Appellant. | B314925<br><br>(Los Angeles County Super. Ct. No. BC485198) |

APPEALS from a judgment of the Superior Court of Los Angeles County, Elizabeth R. Feffer, Judge.  Affirmed in part, dismissed in part.

Clyde & Co US, Kim W. West, Alec H. Boyd, Douglas J. Collodel and Roxana Sadeghi, for Plaintiff, Cross-Defendant, and Appellant.

Baker, Keener & Nahra and Phillip A. Baker; BG Law, Steven T. Gubner and Jason B. Komorsky, for Defendant, Cross-Complainant, and Appellant.

_____

## I.     INTRODUCTION

In this appeal from a stipulated judgment in favor of plaintiff and cross-defendant AXIS Surplus Insurance Company (AXIS), defendant and cross-complainant Aletheia Research and Management, Inc. (Aletheia) challenges certain of the trial court's legal rulings following a bench trial and on motions in limine. We affirm.[1]

_____

[1]     In its respondent's brief, AXIS argues that even if we were to disagree with the rulings challenged on appeal, we should affirm the judgment because the trial court erred in denying its motion for summary adjudication. We will affirm the judgment based on the court's rulings at the bench trial and on the motions in limine and therefore need not consider AXIS's alternative argument.

AXIS has also filed a cross-appeal from the court's denial of its summary adjudication motion. As the prevailing party in the judgment, however, AXIS is not aggrieved by the court's rulings. We will therefore dismiss AXIS's cross-appeal. (See Code Civ. Proc., § 902 [only aggrieved party may appeal]; *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1026 ["A party who has an interest recognized by law that is adversely affected by the judgment or order is an aggrieved party"].)

## II. BACKGROUND

A. *The Parties*

Peter J. Eichler, Jr., Roger Peikin, Patricia Barnes, and Bruce Lee were directors (the Directors) of Aletheia, an investment management firm.

AXIS was an insurance company that sold to Aletheia a directors and officers' excess liability insurance policy (the AXIS Policy).

B. *The Insurance Policies*

### 1. The Houston Policy

Houston Casualty Company (Houston) issued to Aletheia a primary directors and officers' liability insurance policy, for the policy period of March 1, 2009, through April 30, 2010 (the Houston Policy). The Houston Policy was a "'claims made and reported'" policy,[2] which provided for $5,000,000 in limits and specified that it "[DID] NOT PROVIDE FOR ANY DUTY OR

---

[2] A "claims made and reported" policy "specifically limits coverage to claims made against the insured *and* reported to the company during the policy period [or within the reporting period pursuant to the policy's terms]. 'Such policies only cover claims reported to the insurer *during* the policy [or reporting] period. Timely reporting of the claim is thus the event *triggering coverage*; this condition is enforceable according to its terms.'" (*KPFF, Inc. v. California Union Ins. Co.* (1997) 56 Cal.App.4th 963, 972.)

OBLIGATION ON THE PART OF THE INSURER TO DEFEND ANY INSURED(S)."

Provision I.A.(3) of the Houston Policy provided that: "The Insurer shall pay on behalf of the Insured Adviser Loss which the Insured Adviser pays as indemnification to the Insured Person(s) arising from a Claim first made during the Policy Period for any Wrongful Act(s)." Under the terms of the Houston Policy, "Insured Adviser" was defined as Aletheia, and "Insured Person(s)" was defined as the Directors. The policy defined a "Claim" as "any civil . . . proceeding (including any appeal therefrom) commenced by the service of a complaint or similar pleading and initiated against the Insured(s)[.]" And, it defined "Loss" as "damages, judgments, settlements, and Costs, Charges and Expenses incurred by the Insured(s)," with exceptions not applicable here. "Costs, Charges and Expenses" was defined as "reasonable and necessary legal fees and expenses (including expert fees) and cost of attachment or similar bonds incurred by the Insured(s) in defense of any Claim . . . ." (Emphasis removed.)

2.     The AXIS Policy

The AXIS Policy provided for coverage of $5,000,000 in excess of the limits provided by the Houston Policy. The AXIS Policy stated that "[AXIS] shall provide the Insureds with insurance during the Policy Period excess of all applicable Underlying Insurance. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable Primary Policy and, to the extent coverage is further limited or

4

restricted thereby, to any other applicable Underlying Insurance. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable Underlying Insurance." (Emphasis removed.) The "Underlying Insurance" and "Primary Policy" was the Houston Policy. "Insureds" referred to Aletheia and the Directors.

C.     *The Proctor Action and the Houston Coverage Action*

On February 4, 2010, Aletheia filed suit against Proctor Investment Managers LLC, Proctor Investment Distributors LLC, National Bank of Canada Financial, Inc., James C. Coley II, Mona Aboelnaga, and Gregory Meredith (collectively Proctor) in Los Angeles County Superior Court (the Proctor Action).

On February 16, 2010, Proctor filed suit against Aletheia in New York Supreme Court (the New York Action).

On June 14, 2010, Aletheia submitted a copy of the New York Action to Houston, tendering it for coverage under the Houston Policy. On August 16, 2010, Houston denied coverage on the grounds that the New York Action fell under a prior Houston insurance policy, the limits of which had been exhausted by other claims. (*Aletheia Research & Mgmt. v. Houston Cas. Co.* (C.D.Cal. 2011) 831 F.Supp.2d 1210, 1216 (*Aletheia*).)

On September 15, 2010, the New York Action was dismissed on forum non conveniens grounds. On January 18, 2011, Proctor refiled the action as a cross-complaint against Aletheia and other defendants in the Proctor Action. On March 10, 2011, Proctor filed an amended cross-complaint, alleging a breach of fiduciary duty claim against Aletheia and the Directors.

On April 8, 2011, Aletheia filed a complaint against Houston in the United States District Court for the Central District of California, seeking to establish its rights to insurance coverage (Houston Coverage Action).

In November 2011, Aletheia's counsel sent two letters to AXIS, tendering the amended cross-complaint in the Proctor Action for coverage.

On December 19, 2011, the federal district court granted Aletheia's motion for summary adjudication against Houston, finding that the claim fell within the 2009–2010 period. (*Aletheia, supra*, 831 F.Supp.2d at p. 1225.)

D.    *The AXIS Coverage Action*

On December 23, 2011, AXIS denied Aletheia's tender, based on what it deemed to be late notice of the claim.

On January 11, 2012, Aletheia's counsel sent a letter to AXIS's coverage counsel, contending, among other things, that Aletheia had "substantially complied with the reporting requirement" and timely tendered the claim to Houston.

On May 23, 2012, AXIS filed the complaint in the case on appeal.  AXIS sought declaratory relief, namely, a declaration that it had complied with all of its obligations under the AXIS Policy and was not required to provide coverage to Aletheia for any costs, attorney fees, or interest paid in connection with the Proctor Action.

On June 1, 2012, Aletheia advised AXIS that the Houston Policy was nearing exhaustion; and, on June 21, 2012, Aletheia advised AXIS that the Houston Policy coverage was exhausted by

the payment of defense expenses incurred by Aletheia and the Directors.

On July 16, 2012, Aletheia cross-complained against AXIS, alleging breach of contract and bad faith denial of insurance. Aletheia sought declaratory relief that AXIS had a duty to defend, to pay reasonable defense costs, and to indemnify in connection with the Proctor Action.

On August 20, 2012, AXIS demurred to Aletheia's cross-complaint, asserting that because Aletheia provided late notice of the Proctor Action, AXIS owed Aletheia no coverage.

E.    *Aletheia's Bankruptcy and the Proctor Settlement*

On November 11, 2012, Aletheia filed a petition for bankruptcy, which automatically stayed the Proctor Action.[3]  On July 30, 2013, Director Lee filed with the bankruptcy court a proof of claim, seeking reimbursement for defense costs he paid during the Proctor Action.

On January 15, 2013, Jeffrey Golden was appointed as trustee for the bankruptcy estate of Aletheia (Trustee).[4]

---

[3]    Aletheia filed a petition for Chapter 11 bankruptcy, which the bankruptcy court subsequently converted to a Chapter 7 bankruptcy.  "'[C]hapter 7 of the Bankruptcy Code . . . embodies two ideals:  (1) giving the individual debtor a fresh start, by giving him a discharge of most of his debts; and (2) equitably distributing a debtor's assets among competing creditors.'" (*Burkart v. Coleman* (*In re Tippett*) (9th Cir. 2008) 542 F.3d 684, 689; 11 U.S.C. § 701 et seq.)

[4]    "'Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any

7

On May 5, 2014, the Trustee entered into a settlement agreement with Proctor (Proctor Settlement Agreement), and agreed to grant Proctor an "allowed, non-subordinated, non-priority, general unsecured [creditor's] claim against the Aletheia estate in an amount equal to the greater of (i) $21,775,000; and (ii) 60 [percent] of the total pool of non-subordinated, non-priority, general unsecured claims finally allowed in the [b]ankruptcy [c]ase . . . ." For this and other consideration, Proctor released its claims against Aletheia. The Proctor Settlement Agreement specified, however, that Proctor did not release and did not intend to release "claims, causes of action, liability or demands that were brought or could have been brought against Eichler, Barnes, or Peikin . . . ." The agreement also recited that Proctor had separately settled its claim against Lee and dismissed its claim against Lee with prejudice.

F.    *Denial of Summary Judgment Motions*

On July 13, 2018, Aletheia filed a summary adjudication motion, and AXIS filed a motion for summary judgment, or in the alternative, summary adjudication on Aletheia's cross-complaint.

On January 11, 2019, the trial court denied AXIS's motion, ruling that AXIS was not entitled to summary judgment on its late notice defense. The court also found that AXIS failed to meet its initial burden of demonstrating that it owed no coverage to

---

suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy. [Citations.]'" (*Shaoxing County Huayue Import & Export v. Bhaumik* (2011) 191 Cal.App.4th 1189, 1197.) We will refer to "Aletheia" and "Trustee" interchangeably throughout the remainder of the opinion.

8

Aletheia.[5]  Finally, the court denied Aletheia's summary adjudication motion.

G.    *Bench Trial*

On February 21, 2019, the trial court ordered the parties to a bench trial to resolve certain legal issues prior to the commencement of the jury trial.  Following the filing of trial briefs and supporting documents, and the parties' oral argument, the court took the bench trial matters under submission.

On April 30, 2019, the trial court issued its rulings.  As relevant here, the court found:

"[U]nder the [Houston Policy], [AXIS's] obligation to pay attached only after Aletheia paid the Directors indemnity for legal expenses for covered **Loss** that they incurred, and not when the liability was itself incurred. . . .  [¶]  . . . The question of whether Aletheia paid indemnification for its Directors for covered losses is an issue for resolution by the jury at the second phase of the trial."

The trial court continued:  "As an aside, it is noted that [AXIS] argues that the Trustee will have to demonstrate that Aletheia complied with Corporations Code[] section 317.  This section grants corporations the power to indemnify their agents; it is not, however, exclusive of any additional rights to

---

[5]    AXIS moved for summary adjudication on the issue of whether AXIS had a duty to defend.  Aletheia admitted there was no such duty and the court granted the motion on this issue.  The court also granted AXIS's motion on the grounds that AXIS did not owe coverage to Aletheia pursuant to any provisions, other than provision I.A.(3), in the Houston Policy.  Altheia does not challenge the court's rulings on these issues.

9

indemnification to which such individuals are entitled 'under any bylaw, agreement, vote of shareholders or disinterested directors, or otherwise, to the extent the additional rights to indemnification are authorized in the articles of the corporation.' (Corp. Code, § 317, subd. (g).) Although the Trustee will bear the initial burden to establish these Directors' right to indemnification, the Trustee need not demonstrate compliance with [Corporations Code] section 317 *unless Aletheia claims that the Directors were entitled to indemnification on this basis.*" (Italics added.)

The trial court also determined that during the jury trial phase, "the Trustee will bear the burden to demonstrate that it has paid indemnification for the relevant Directors, including demonstrating it complied with all statutory requirements or that it was excused from compliance, and not simply that Aletheia paid legal fees incurred in a common defense."

Next, the trial court considered AXIS's argument that the Proctor Settlement Agreement did not impose an obligation on Aletheia to indemnify the Directors. The court agreed, reasoning: "Although, a triable issue exists as to whether Aletheia indemnified its Directors, and whether [AXIS] therefore became liable to indemnify Aletheia for the amounts that were paid, the Directors' claims were expressly excluded from the scope of the [Proctor Settlement Agreement]. Because the Directors' claims were excluded from the [Proctor Settlement Agreement] between the Trustee and Proctor, the amounts incurred for the [Proctor Settlement Agreement] also fall outside of the scope of Aletheia's claims against [AXIS] for insurance bad faith for denial of indemnification for the Directors. Accordingly, the Trustee is not

10

entitled to claim the amounts owed under the [Proctor Settlement Agreement] . . . to Proctor as damages against [AXIS]."

Finally, the trial court addressed the Trustee's argument that pursuant to Insurance Code section 11580, "the [AXIS] Policy [was] deemed to provide that Aletheia's bankruptcy [did] not release [AXIS] from its obligations to pay damages sustained or loss occasioned during the life of the policy." The court rejected the Trustee's argument, finding that: "[W]hile Insurance Code[] section 11580 would not appear to apply to the claims at hand, the policy itself would appear to allow recovery if the Settlement Amount were recoverable as losses or damages. The Trustee, however, does not establish that the relevant provision is for loss or damage resulting from liability for injury suffered by another person. (Ins. Code, § 11580, subd. (a)(1).) The policy provision of Subdivision (A)(3) indemnifies the company for payments made as indemnification. The Trustee also does not demonstrate that Aletheia qualifies as a 'person' for purposes of this section."

H.    *Motions In Limine*

On February 21, 2020, the trial court issued its rulings on certain motions in limine. Aletheia challenges the court's rulings on AXIS's motions in limine Nos. 2, 15, and 16.

In motion in limine No. 2, AXIS sought to preclude testimony or argument that AXIS's denial of coverage caused Aletheia to file for bankruptcy. AXIS argued that Eichler's declaration, submitted in support of Aletheia's bankruptcy filing, demonstrated that Aletheia filed for bankruptcy because of the

11

existence of an income tax lien, and not because of AXIS's denial of coverage.

The trial court granted AXIS's motion in limine, but not on the grounds raised by AXIS. Instead, the court ruled that evidence regarding the causes for Aletheia's bankruptcy filing was excludable pursuant to Evidence Code section 352. In the court's view, there was a substantial likelihood that the admission of such evidence would confuse the issues at trial and result in an undue consumption of time. Moreover, the relevance of such evidence was "questionable."

In motion in limine No. 15, AXIS sought to exclude evidence or argument that it had engaged in bad faith by failing to settle the Proctor Action. In motion in limine No. 16, AXIS sought to exclude evidence and argument regarding the Proctor Settlement as irrelevant, based on the trial court's prior bench trial ruling. The trial court granted both motions.

I. *Stipulation to Judgment*

The parties subsequently filed a stipulation that stated: "as a result of the [c]ourt's rulings on (1) the parties' motions for summary judgment, (2) the bench trial, and (3) AXIS's motions in limine, the parties agree that Aletheia's claimed damages will not be recoverable at the time of trial" and "the parties further agree that commencing a jury trial would be a waste of judicial resources[.]" The parties therefore agreed that "[j]udgment shall be and hereby is entered in favor of AXIS and against Aletheia on each cause of action of Aletheia's [c]ross-[c]omplaint."

12

On June 7, 2021, the trial court entered the judgment;[6] and, on June 8, 2021, the court ordered AXIS's complaint dismissed without prejudice.[7] On July 6, 2021, AXIS served a Notice of Entry of Judgment. On August 31, 2021, Aletheia filed its notice of appeal.[8]

---

[6] We reject AXIS's argument that there was no entry of judgment because the signed judgment document did not bear a filed stamp. The signed judgment was an exhibit attached to a document entitled "STIPULATION TO ENTRY OF JUDGMENT" (Stipulation). The first page of the Stipulation bears a filed stamp of June 7, 2021. And, AXIS has pointed to no authority which requires that the judgment document itself be filed stamped in order to be considered filed under these circumstances. Thus, we construe the stipulated judgment as having been entered on June 7, 2021.

[7] On August 25, 2023, the trial court entered a judgment of dismissal effective June 8, 2021, nunc pro tunc. The June 8, 2021, judgment is the final judgment for purposes of appeal. (See *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 698 [complaint and cross-complaint between same parties must be resolved before judgment is final].)

[8] Aletheia's notice of appeal states that it appeals from a judgment dated "July 6, 2021." California Rules of Court, "[r]ule 8.100(a)(2)'s liberal construction requirement reflects the long-standing "'law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced."'" (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882.) "While the timely filing of a notice of appeal is an absolute jurisdictional prerequisite [citations], technical accuracy in the contents of the notice is not." (*Id.* at pp. 882–

13

# III. DISCUSSION

## A. *Bench Trial*

The Trustee challenges several of the trial court's bench trial rulings. "'We review questions of law de novo . . . .'" (*Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 872–873.)

### 1. Indemnity Policy

The Trustee first contends that the trial court erred when it interpreted provision I.A.(3) of the Houston Policy as an indemnification, rather than a liability, contract. "In a liability contract, the insurer agrees to cover *liability* for damages. If the insured is liable, the insurance company must pay the damages. In an indemnity contract, by contrast, the insurer agrees to reimburse expenses to the insured that the insurer is liable to pay and has paid." (*Okada v. MGIC Indem. Corp.* (9th Cir. 1986) 823 F.2d 276, 280.)

As noted, provision I.A.(3) provides that "[AXIS] shall pay on behalf of [Aletheia] Loss which [Aletheia] pays as indemnification to the [Directors] arising from a Claim first made during the Policy Period for any Wrongful Act(s)." According to the Trustee, notwithstanding the provision's reference to the

___

883.) Here, although the June 7, 2021, judgment is not a final judgment, neither party has indicated it was misled or prejudiced by the notice of appeal. Additionally, the only judicial act occurring on July 6, 2021, was the notice of entry of judgment, which included as an attachment the signed June 7, 2021, judgment. Accordingly, we deem Aletheia's notice of appeal sufficient for purposes of appeal.

term "indemnification," the provision is ambiguous because the term "[AXIS] shall pay on behalf of [Aletheia]" is contrary to an indemnification agreement as "an insurer cannot pay an obligation on behalf of its insured if the insured is required to first pay that obligation." The Trustee further argues that this purported ambiguity must be construed against AXIS. We disagree.

"'[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract . . . . Courts will not strain to create an ambiguity where none exists.'" (*Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688, 698.) Because there are few California appellate decisions dealing with director and officer policies, "'California courts often look to decisions of California federal courts and out-of-state cases in resolving coverage issues and interpreting policy provisions.'" (*August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.* (2007) 146 Cal.App.4th 565, 577.)

*Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.* (9th Cir. 2006) 471 F.3d 961 (*Pan Pacific*) is instructive. The coverage provision in that case was included in a section of the agreement entitled "Company Reimbursement," and provided for "coverage where the insurer agreed to 'pay on behalf of the Company Loss for . . . which the Company has, to the extent permitted or required by law, indemnified the Directors and Officers, and which the Directors and Officers have become legally obligated to pay as a result of a Claim . . . where such Claim is first made during the Policy Period . . . against the Directors and Officers . . . for a Wrongful Act which takes place during or prior to the Policy Period.'" (*Id.* at p. 972.) The Ninth Circuit concluded that

15

"[t]he requirement that the Company 'has indemnified' its directors and officers appears to require that the Company must in fact make payments on behalf of its officers and directors. A requirement that the Company make actual payments on behalf of its directors and officers agrees with the caption 'Company Reimbursement,' which is typically considered to require an out-of-pocket loss by the party seeking reimbursement." (*Ibid*.)

Similarly, here, provision I.A.(3) is part of a section entitled "INSURED ADVISER PROFESSIONAL AND MANAGEMENT LIABILITY INSURANCE AND CORPORATE REIMBURSEMENT." "Reimbursement" "typically . . . require[s] an out-of-pocket loss by the party seeking reimbursement." (*Pan Pacific, supra*, 471 F.3d at p. 972.) Indeed, "reimburse" means "to pay back to someone." (Meriam-Webster Dict. online, <http://www.merriam-webster.com/dictionary/reimburse> [as of Mar. 13, 2024], archived at < https://perma.cc/JW88-9ENC>.) Further, provision I.A.(3) requires payment only for "Loss which [Aletheia] pays as indemnification" to its Directors. Accordingly, the trial court did not err when it interpreted provision I.A.(3) as creating an indemnity policy. (See also Civ. Code, § 2778 ["In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: [¶] . . . [¶] Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof"].)[9]

---

[9] In arguing that the trial court's interpretation of provision I.A.(3) is unreasonable, the Trustee submits that the court's interpretation differed from that of the district court in the Houston Coverage Action. According to the Trustee, the district

16

### 2. Proctor Settlement Agreement's Exclusion of Claims against Directors

The Trustee next contends the trial court prejudicially erred when it ruled that the funds the Trustee agreed to pay to Proctor under the terms of the Proctor Settlement Agreement fell outside the scope of Aletheia's claimed damages against AXIS. According to the Trustee, the court's ruling violated its constitutional right to a jury trial on certain factual issues.

As we explained above, provision I.A.(3) of the Houston Policy created an indemnity policy, which obligated AXIS to pay Aletheia any damages, judgments, settlements, costs, charges, and expenses, which Aletheia "pa[id] as indemnification to [the Directors]." The trial court found that the funds Aletheia agreed to pay under the terms of the Proctor Settlement Agreement were not covered by the AXIS Policy. In the court's view, such payments could not be construed as an indemnification of the Directors because the claims against the Directors were expressly excluded from the Proctor Settlement Agreement.

---

court "ordered [Houston] to pay defense fees as ***incurred*** by Aletheia in the Proctor Litigation, not reimbursed to Aletheia after it paid said fees." (Emphasis original.) Even assuming that the district court's ruling, which considered the different issue of whether the claim fell within the 2009–2010 coverage period, could be construed as interpreting the Houston Policy as a liability, rather than an indemnity, policy, federal district court opinions are not binding on Courts of Appeal. (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1043, fn. 8.) Moreover, the district court ruling would not be binding on AXIS because AXIS was neither a party to the case nor in privity with Houston. (See *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 394.)

17

A party is entitled to a jury trial on certain factual issues. (Code Civ. Proc., § 592.) "All questions of law (including but not limited to questions concerning the construction of statutes and other writings, the admissibility of evidence, and other rules of evidence) are to be decided by the court." (Evid. Code, § 310, subd. (a); Code Civ. Proc., § 591 ["An issue of law must be tried by the court"].) "A settlement agreement is interpreted according to the same principles as any other written agreement. [Citation.] It must be interpreted to give effect to the mutual intent of the parties as it existed at the time, insofar as that intent can be ascertained and is lawful. [Citations.] If the language of the agreement is clear and explicit and does not involve an absurdity, determination of the mutual intent of the parties and interpretation of the contract is to be based on the language of the agreement alone. [Citations.]" (*Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1374.) Additionally, "[t]he court generally may not consider extrinsic evidence of any prior agreement or contemporaneous oral agreement to vary or contradict the clear and unambiguous terms of a written, integrated contract. (Code Civ. Proc., § 1856, subd. (a); *Cerritos Valley Bank v. Stirling* (2000) 81 Cal.App.4th 1108, 1115–1116; *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1478 [parol evidence may not be used to create a contract the parties did not intend to make or to insert language one or both parties now wish had been included].) Extrinsic evidence is admissible, however, to interpret an agreement when a material term is ambiguous." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.)[10]

---

[10] Aletheia conceded during oral argument that neither party

18

The Proctor Settlement Agreement provided that Proctor would "fully and completely release, acquit and forever discharge, Aletheia . . . from any and all claims, causes of action, liabilities, obligations, debts, attorneys' fees, [and] indemnities . . . ." It then specified: "For the avoidance of doubt, [the Proctor] Released Claims do not and are not intended to include claims, causes of action, liability, or demands that were brought or could have been brought against Eichler, Barnes or Peikin and nothing in this Agreement shall be deemed to release any claims that [Proctor] ha[s] against Eichler, Peikin or Barnes." Moreover, the Proctor Settlement Agreement included a recital that "on March 27, 2013, Proctor dismissed with prejudice its claim against Lee in the Aletheia/Proctor Action pursuant to a settlement that Proctor entered into with Lee . . . ." Finally, Proctor agreed to dismiss with prejudice its claims against Aletheia, but it dismissed without prejudice its claims against Eichler, Peikin, and Barnes (the unreleased Directors). The settlement with Lee outside of the Proctor Settlement Agreement, the refusal to release the unreleased Directors, and the dismissal without prejudice of the claims against those Directors, demonstrate a clear intent by Proctor and the Trustee to resolve Proctor's claims against Aletheia but not against the Directors.

The Trustee nonetheless contends that the Proctor Settlement Agreement resolved Proctor's breach of fiduciary duty claim against the Directors. The Trustee interprets the terms of the Proctor Settlement Agreement as dismissing Proctor's claims against the Directors with prejudice because those claims would be time-barred if refiled; and, if "Proctor sought to resurrect the covered breach of fiduciary duty claim, it would have triggered

_____

presented extrinsic evidence on the meaning of provision I.A.(3).

19

Aletheia's indemnification obligation and, thus, breached the release in the Proctor Settlement [Agreement] given to Aletheia."

The Trustee's proffered interpretation is contrary to the plain language of the Proctor Settlement Agreement. "If a contract's language is clear and unambiguous, intent is determined solely by the language within the four corners of the contract." (*Filtzer v. Ernst* (2022) 79 Cal.App.5th 579, 584.) Proctor and the Trustee were the only parties to the Proctor Settlement Agreement, and, Aletheia's indemnification obligations to the unreleased Directors, if any, are outside the scope of that agreement. Moreover, the Proctor Settlement Agreement expressly excluded from the release Proctor's claim against the Directors. Thus, the Directors' liability for the breach of fiduciary duty claim remained unresolved by the Proctor Settlement Agreement and the Trustee's obligation under that agreement cannot be deemed a payment in indemnification to the Directors.

Accordingly, we find the trial court did not err by finding, as a matter of law, that the funds the Trustee agreed to pay to Proctor under the Proctor Settlement Agreement was not a covered Loss under provision I.A.(3) of the Houston Policy. And, the Trustee therefore was not denied its right to a jury trial.[11]

---

[11] Because we affirm this ruling, we need not discuss the Trustee's arguments that it did not have to prove the Proctor Settlement was a covered claim.

### 3. Corporations Code section 317

According to the Trustee, "[t]he [t]rial court erred in ruling that Aletheia must establish it complied with California Corporations Code section 317, or that it was excused compliance, to establish coverage under [provision I.A.(3)]." (Original capitalization and boldface omitted.) The Trustee's argument, however, misinterprets the trial court's order. The court rejected AXIS's argument that the Trustee was required to demonstrate it complied with Corporations Code section 317, "unless Aletheia claims that the Directors were entitled to indemnification on this basis." In so ruling, the court expressly acknowledged that Corporations Code section 317 was not the exclusive means by which a corporation could indemnify its directors. Thus, Aletheia's complaint about the court's ruling on the applicability of Corporations Code section 317 is meritless.

Moreover, we reject as inapposite Aletheia's contention that "[t]he evidence at trial will demonstrate that Aletheia indemnified . . . Directors against their costs to defend the Proctor Litigation by providing them a joint defense with Aletheia, which Aletheia incurred fees and paid for." By foregoing trial and consenting to a judgment against it, the Trustee has forfeited any argument about what the evidence at trial would have shown. (See *Villano v. Waterman Convalescent Hospital, Inc.* (2010) 181 Cal.App.4th 1189, 1200 (*Villano*) [in appeal of stipulated judgment, "the appellant has '"the burden of showing reversible error by an adequate record." [Citation.] One aspect of that burden requires that the appellant develop the fullest possible evidentiary record *before* seeking review'"].)

21

To the extent the Trustee contends the trial court erred by finding it would "bear the burden to demonstrate that it has paid indemnification for the relevant Directors, including demonstrating it complied with all statutory requirements or that it was excused from compliance, and not simply that Aletheia paid legal fees incurred in a common defense," the Trustee has failed to cite any legal authority for the proposition that payments made in violation of relevant statutory authority are recoverable. It therefore has not satisfied its burden on appeal. (See *Villano, supra*, 181 Cal.App.4th at p. 1200 [appellant has burden to show prejudice in appeal from stipulated judgment].)

### 4. Insurance Code section 11580

The Trustee next contends that the trial court erred by finding that provision I.A.(3) is not subject to Insurance Code section 11580. The Trustee, however, does not articulate how it has been prejudiced by this ruling. The record on appeal demonstrates that AXIS asserted in its trial brief that the "allowed claim in bankruptcy does not constitute [a] Loss resulting from a Wrongful Act" under provision I.A.(3). The Trustee responded that Insurance Code section 11580 applied and required AXIS to cover Aletheia's damages, regardless of Aletheia's bankruptcy, including its obligations under the Proctor Settlement Agreement. The trial court ruled that "while Insurance Code[] section 11580 would not appear to apply to the claims at hand, the policy itself would appear to allow recovery if the Settlement Amount were recoverable as losses or damages." Accordingly, the court's ruling did not prevent the Trustee from

22

proving at trial that, despite the bankruptcy proceedings, it was entitled to recover appropriate damages against AXIS. The Trustee therefore has failed to demonstrate that it was prejudiced by any assumed error by the court. (*Villano, supra,* 181 Cal.App.4th at p. 1200.)

B.      *Motions in Limine*

Finally, we address the Trustee's arguments concerning the trial court's rulings on AXIS's motions in limine. "The trial court enjoys 'broad authority' over the admission and exclusion of evidence. [Citation.] We review a trial court's ruling on a motion in limine to exclude evidence for an abuse of discretion. [Citations.] The trial court's authority is particularly broad 'with respect to rulings that turn on the relevance of the proffered evidence.' [Citation.] Furthermore, '[i]t is for the trial court, in its discretion, to determine whether the probative value of relevant evidence is outweighed by a substantial danger of undue prejudice. The appellate court may not interfere with the trial court's determination . . . unless the trial court's determination was beyond the bounds of reason and resulted in a manifest miscarriage of justice.' [Citation.]" (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295–296.)

"We review claims of evidentiary error for prejudice applying the '"miscarriage of justice"' or 'reasonably probable' harmless error standard. [Citations.] Thus, an erroneous evidentiary ruling requires reversal only if '"there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error."'

[Citation.]" (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231.)

For motion in limine No. 2, the Trustee asserts that the trial court's ruling, excluding evidence about the cause of Aletheia's bankruptcy, violated the Trustee's right to "a 'full and fair opportunity to state all the facts in its favor.'" The Trustee cites in support *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595, which held that a trial court's use of the in limine process to dispose of a case or cause of action is reviewed like a grant of nonsuit motion after opening statement. We disagree with the Trustee. Evidence about the cause of Aletheia's bankruptcy would, at best, demonstrate the extent of damages that the Trustee could recover for its claim of bad faith denial of insurance coverage. The court's exclusion of such evidence did not preclude the Trustee from proving its claim at trial. Moreover, on this record, we find the court did not abuse its discretion by concluding the probative value of evidence about the cause of Aletheia's bankruptcy was marginal and substantially outweighed by the probability that such evidence would confuse the issues and necessitate undue consumption of time.

As to the trial court's rulings on motions in limine Nos. 15 and 16, the basis for the Trustee's arguments on appeal is that the court erred by finding that the Proctor Settlement Agreement was not a covered claim under provision I.A.(3). Because we affirm the court's ruling as to the Proctor Settlement Agreement, we find the Trustee was not prejudiced by the court's in limine orders.

24

## IV.  DISPOSITION

The judgment is affirmed and AXIS's cross-appeal is dismissed.  AXIS is awarded costs on Aletheia's appeal and Aletheia is awarded costs on AXIS's cross-appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:


BAKER, Acting P. J.


LEE, J.*

---

*        Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.